[Civ. No. 4722.  Second Appellate District, Division One.—May 12, 1927.]

J. HARVEY ELLIS et al., Respondents, v. COLUMBINE CREAMERY COMPANY (a Corporation) et al., Appellants.

[1] LANDLORD AND TENANT—UNLAWFUL DETAINER—JOINT TENANCY—PLEADING—FINDINGS.—In an action for unlawful detainer, a finding that the plaintiffs "were the owners of, as joint tenants," of the property described in the complaint, was fully authorized, where the complaint alleged ownership in plaintiffs as joint tenants of the property in question, which allegation not being denied in the answer, must, for the purposes of the action, be taken as true.

[2] ID.—LEASES—RENEWAL—NOTICE TO ONE OF JOINT TENANTS—SUFFICIENCY OF.—In such action, the act of the tenant in notifying one of the plaintiffs, who were joint tenants, of the former's desire to renew the lease or execute a new one was a sufficient notice thereof to both of the parties.

[3] ID.—OPTION TO LEASE—NOTICE.—In such action, where the lease was modified so as to provide that at the expiration of the term the tenant "is given an option to lease the premises at a monthly rental of Seventy-five. Dollars per month for a term of three years," the tenant, by giving written notices that "we will exercise the option granted to us to lease the premises" for the term and rental provided in the modified agreement, and that it desires and

-----------

1.  See 21 Cal. Jur. 155; 21 R. C. L. 561.

2.  See 7 R. C. L. 874.

3.  Sufficiency of notice of exercise of option of renewal in lease, note, 1 A. L. R. 343.  See, also, 15 Cal. Jur. 662; 16 R. C. L. 893.

> intends to use and avail itself and exercise said option, sufficiently manifested its intention to avail itself of the right created in it by the modified agreement relating to a continuance of the relation of landlord and tenant between the parties; and its right to a re-lease of the property in accordance with the agreement of the parties should not be cut off because of any alleged failure on its part either to give oral notice or in every instance to technically specify the exact nature of the instrument by which the tenant should remain in the possession and enjoyment of the premises.

(1) 38 Cyc., p. 1973, n. 15.  (3) 36 C. J., p. 664, n. 20.

APPEAL from a judgment of the Superior Court of Los Angeles County. Carlos S. Hardy, Judge. Reversed.

The facts are stated in the opinion of the court.

Chris. Wilson for Appellants.

Swaffield, Swaffield & Pray, C. Douglas Smith and Frank P. Farrell for Respondents.

HOUSER, J.—This is an appeal by the defendants from a judgment in an action for unlawful detainer, wherein plaintiffs were awarded possession of the premises described in the complaint, as well as the sum of $1,000 damages for unlawful detention.

Plaintiffs were the owners in joint tenancy of the property described in the complaint. The defendant Columbine Creamery Company was an original lessee, and the defendant Swift & Company was a subtenant of Columbine Creamery Company.

The original lease contained a provision by which the lessee was given "an option of renewing this lease at the expiration of the date as specified herein." About sixteen months before the lease expired each of the then parties thereto signed the following agreement:

"Long Beach, California, March 15, 1922.

"By mutual agreement the terms of the within lease are this day changed to read and be as follows: At the expiration of the terms mentioned herein (July 31, 1923), the party of the second part is given an option to lease the premises at a monthly rental of Seventy-five Dollars per month for a term of three years."

Nearly three months preceding the date of the expiration of the lease the tenant then in possession sent to J. Harvey Ellis, who was one of the joint owners of the leased premises, a registered letter, the body of which was as follows: "Having been advised that you are now the owner of the premises known as 836 Pine Avenue of this city, under the provisions of the lease which we hold on said premises, the terms and conditions of which you are familiar with, we hereby notify you in writing that we will exercise the option granted to us to lease the premises for the period of three (3) years from and after July 31st, 1923, at a monthly rental of $75.00 per month."

Approximately one month later the same tenant served on said J. Harvey Ellis a notice, of which the following is a copy:

"To J. Harvey Ellis, Owner of the premises described as certain storeroom occupying ground floor of a certain building known and designated as No. 836 Pine Avenue in the City of Long Beach, County of Los Angeles, State of California; and to all persons claiming any interest therein:

"You and each of you are hereby notified that Columbine Creamery Company desires and intends to exercise the option granted to it in a certain lease dated February 26, 1920, wherein the above described premises, namely a certain store room occupying ground floor of building No. 836 on Pine Avenue in the City of Long Beach, County of Los Angeles, State of California, were leased to it, which said option grants to the said Columbine Creamery Company the right of renewing said lease at the expiration of the date as specified therein, namely, July 31, 1923.

"You and each of you are hereby further notified that Columbine Creamery Company desires and intends to use, avail itself of and exercise a certain option in said lease, which said option is set forth in said lease as follows:

"'Long Beach, California, March 15, 1922.

"'By mutual agreement the terms of the within lease are this day changed to read and be as follows: At the expiration of the terms mentioned herein (July 31, 1923) the party of the second part is given an option to lease the premises at a monthly rental of Seventy-five Dollars per month for a term of three years.'"

Thereafter and before the date fixed in the lease for its expiration, plaintiff J. Harvey Ellis ordered the tenant in possession to vacate the leased premises on the termination of the original lease. At the same time, according to the testimony of one of the witnesses, the tenant, through its officers, stated to said plaintiff that it wished to re-lease the property for three years at the rate of $75 per month, which suggestion was declined by Mr. Ellis. In other words, as was stated by the judge of the trial court: ''The testimony shows conclusively that the defendants took the position that they did not need a new lease, that they had a lease here which would be renewed, and the lease itself would go on, but that they did offer, if Mr. Ellis insisted on a new lease, to make it. Mr. Ellis did not insist on it, and said they were not entitled to anything, either the renewal or a new lease. . . . ''

Plaintiffs having refused either to renew the lease or to execute a new one (although on the first day of each and every month after the termination of the original lease and up to the date of trial of the action the tenant tendered to J. Harvey Ellis the sum of $75 per month, which in each case the plaintiffs declined to accept), the present action was commenced and which, as hereinbefore stated, resulted in a judgment in favor of plaintiffs for the restoration to them of the possession of the leased premises, together with the sum of $1,000 damages for the unlawful detention thereof.

The gravamen of appellants' complaint is that the findings of fact are not supported by the evidence. The first of the specifications of error upon which reliance is placed arises from the fact that each of the several requests made by the defendants, whether oral or written, to the effect that either the original lease be renewed, or that a new lease be executed, was made to one of the plaintiffs only.

[1] The complaint alleges ownership in plaintiffs as joint tenants of the property in question, which allegation not being denied in the answer, ''must, for the purposes of the action, be taken as true.'' (Sec. 462, Code Civ. Proc.) It follows that the finding that the plaintiffs ''were the owners of, as joint tenants,'' of the property described in the complaint, was fully authorized.

[2] But assuming that the ownership by the plaintiffs was joint, the respondents question the sufficiency of the notice.

In the case of *Hepburn* v. *McDowell*, 17 Serg. & R. (Pa.) 383 [17 Am. Dec. 677], it is held that notice to two or more persons engaged in a joint act is notice to all; and in *Holbrook* v. *Holbrook*, 15 Me. 9, the principle is announced that a notice given to one of two parties jointly liable is binding upon both. To the same effect, see the following authorities: *Knight* v. *Fifield*, 7 Cush. (61 Mass.) 263; *Watson* v. *Walker*, 23 N. H. 471.

In the case of *Morse* v. *Aldrich*, 1 Met. (42 Mass.) 544, the syllabus contains the following statement: "Where the owner of land, by a covenant which binds his heirs and assigns, engages to do a certain act when thereto requested, a written request to do such act, addressed to all the heirs or assigns, and seasonably delivered at the dwelling-house of one of them, is sufficient; . . . "

In the case of *Ellis* v. *Lull*, 45 N. H. 419, it is held (syllabus): "Where two or more persons are subject to a joint duty or obligation upon notice, and where other special notice is not made necessary by statute or by contract, a notice addressed to all and served on one is notice to all. . . . "

As affecting the question of the sufficiency of the notice with reference to a renewal of the lease, or the execution of a new lease, given by the tenant to one of such joint owners only, the principle is laid down in 7 Ruling Case Law, page 874, that such a notice is binding upon each and all of the joint owners. In discussing the difference in this regard between cotenants and joint tenants, it is said: " . . . nor is the relation of cotenancy of such a nature that notices served on one cotenant, as, for example, of defects of title in the common property purchased, bind the remaining cotenants; but where a grant is made to several persons jointly, a notice addressed to all of them, and served on one of them, is sufficient. In such case it is held that notice to one is notice to all. Where the relation is that of joint tenancy and not cotenancy, a different rule prevails. . . . " (Citing authorities.)

The following authorities are in point: *Detlor* v. *Holland*, 57 Ohio St. 492 [40 L. R. A. 266, 49 N. E. 690]; *Glenn* v.

*Thompson,* 75 Pa. St. 389; *Wright* v. *Kaynor,* 150 Mich. 7 [113 N. W. 779]; *Baker* v. *Kellogg,* 29 Ohio St. 663.

Without at this time having reference to, or in any manner considering, the form or the contents of the notice, it therefore appears that each of the several acts of the tenant in notifying one of the plaintiffs of its desire to renew the lease or execute a new one was a sufficient notice thereof to both of the plaintiffs.

[3] The next finding to which appellants object includes the ultimate fact that following the expiration of the original lease the defendants were not entitled to the possession of the premises described in the complaint, but, to the contrary, that the plaintiffs were entitled to such possession. It will be remembered that the lease as originally executed by the respective parties thereto contained a provision by which the lessee was given "the option of *renewing* the lease at the expiration of the date as specified herein"; and that during the term of the lease the provision with reference to its renewal was modified by an agreement between the then owner and the lessee by which on the expiration of the lease the latter was "given an option to *lease* the premises at a monthly rental of seventy-five dollars per month for a term of three years."

The only substantial difference between the two options was that by the first, the lessee was given the right of *renewing* the lease, without any price per month or term therefor being specified; while in the second option, the lessee was given the right to *lease* the premises—the price per month and the term being fixed.

By the terms of the registered letter sent to plaintiffs by the tenant nearly three months before the lease expired, plaintiffs were notified that the defendant wished to "exercise the option granted to us to *lease* the premises" in accordance with the terms of the agreement modifying the provision contained in the lease as originally executed. In the second notice by the tenant to the plaintiffs the intention of the tenant was made more specific (if possible), in that the tenant declared that it "desires and intends to use, avail itself of and exercise a certain option in said lease, which said option is set forth in said lease as follows." Then follows a copy of the modified agreement by which the defendant was given the option to "lease" the premises.

Following such last written notice of the intention of the tenant with reference to its desire as affecting the renewal of the lease or the execution of a new lease, it appears from the testimony given by one of the witnesses that in a conversation among the officers of the tenant and one of the plaintiffs, the tenant orally informed the plaintiffs that while the tenant claimed that its then lease was "good for another three years," nevertheless it wished to re-lease the premises in accordance with the terms of the modified agreement with reference thereto. The testimony was as follows: " . . . Of course we discussed *pro* and *con* as to whether that lease was good or not that I had. I claimed I had a lease, and it was good for another three years. Mr. Buck (manager of Swift & Company) stated, 'Regardless of that, we want to re-lease. We would like to make a new lease with you for three years at $75 a month.' "

No evidence was introduced which tended to contradict the fact that the notices of intention on the part of the defendants to re-lease the property were given by the defendants to the plaintiffs. The only testimony which at all had a tendency to create a conflict in the evidence as affecting the desire of defendants to re-lease the property related entirely to the oral notice as expressed in the conversation which took place among the several parties to the controversy, and in that regard it appears that one of the plaintiffs testified: "I simply made a statement to Mallonee that when that property was re-leased, or when he got a new lease, I was the person to state what the conditions of that lease would be. . . . I had not been asked for a new lease. . . . He said he had all the lease he needed." Resolving all doubts in favor of the judgment, it may be assumed as a conclusion from such testimony that no oral notice was ever given to the plaintiffs by the defendants of their intention to exercise the option to which reference has been had. But disregarding the technical question of whether the original lease was to be renewed, or a new lease executed, it is uncontroverted that by the written notices, by whatever form the proposed new tenancy was to be evidenced, the tenant wished to avail itself of the right created in it by the modified agreement relating to a continuance of the relation of landlord and tenant between the parties. The intention of the tenant was clearly made manifest in the premises.

Its right to a re-lease of the property in accordance with the agreement of the parties should not be cut off because of any alleged failure on its part either to give oral notice or in every instance to technically specify the exact nature of the instrument by which the tenant should remain in the possession and enjoyment of the premises.

It follows that the findings in question were not supported by the evidence, and as a consequence that the plaintiffs should have failed in their action.

The judgment is reversed.

Conrey, P. J., and York, J., concurred.