[Civ. No. 622. Fourth Appellate District.—April 18, 1932.]

JAMES J. CONRAD et al., Respondents, v. J. D. HAWK et al., Defendants; FRED D. SPRAUL et al., Appellants.

Raphael Dechter for Appellants.

James L. Hanson for Respondents.

MARKS, J.—This is an action to quiet title to real estate in Orange County, fee title to which is vested in respondents. Appellants are here on appeal from a judgment in favor of respondents.

Appellants asserted an interest in the property and the right to the possession thereof by virtue of an oil lease executed by respondents as lessors to J. D. Hawk, as lessee, assigned by him to the Bruce Oil Company and by it to appellants as trustees for the Bruce Oil Company and its creditors. The oil lease contained the usual provisions requiring drilling operations be started within a specified time and be prosecuted continuously and diligently until the well reached a specified depth unless oil were found in paying quantities at a lesser depth. It also provided that in case of a default in any conditions of the lease, except as to time in which drilling operations should be started, the lessors should give the lessee notice of such default and unless it were remedied within thirty days, they might proceed to a forfeiture of the lease at their option.

The Bruce Oil Company drilled a well to a depth of over 4,330 feet on the property, when it encountered mechanical difficulties in its drilling operations and exhausted its funds. It expended about $100,000, on the well and owed about the same amount to its creditors. It executed an assignment of all its assets for the benefit of its creditors to appellants as trustees to act for all the creditors as well as the company. The assignment and declaration of the trust bears the date of October 13, 1927, but it was probably executed and delivered several months later in 1928. No work was done on the leased property by the creditors' committee until on or shortly after April 1, 1929. This work was suspended either shortly after the service by respondents of a notice terminating the lease and the trustees' interest therein or upon the institution of this action.

On March 27, 1929, respondents caused a notice of default in performance under the lease and requiring the correction thereof within thirty days to be served. A notice of termination of the lease and the forfeiture of the rights of the lessee and the assignees because of a failure to remedy the default specified in the prior notice was served April 30, 1929. This action to quiet title was instituted May 29, 1929.

Appellants rely upon two grounds for a reversal of the judgment; first, that the evidence does not support the findings and judgment; and, second, that there was no proper service of either of the two notices to which we have just referred.

Respondents' first notice of default was based upon the failure of the lessee and the assignees to prosecute drilling operations diligently and continuously as required in the lease and their final notice of default was based upon the failure to remedy this breach of the lease within thirty days from the service of the first notice. ■ The trial court found that the drilling obligations of the lease had been breached by appellants and that the breach had not been remedied within thirty days from the service of the first notice. This finding is attacked by appellants.

A careful study of the record before us has led to the conclusion that had the trial court found that the breach of the contract had been remedied, by appellants starting and continuing drilling operations on the property within thirty days after the service of the first notice, such a finding would have been supported by ample and sufficient evidence, and perhaps by a preponderance of all the evidence. However, the trial court did not so find and there is evidence in the record supporting the finding made. Respondents produced one witness who testified that he visited the well on the leased property every day between March 26 and April 29, 1929, and saw none of the drilling operations described by the witnesses offered by appellants; that he went to the well for respondents to ascertain what, if any, work was being done there; that he saw workmen at the well but that their only labors consisted of burning weeds, working on their own private automobiles or sitting down resting; that his visits to the well were at almost every hour of the working day. Another witness for re-

spondents testified that he visited the well at least every other day during the same period for the purpose of observing the work being done there. He corroborated the testimony of the other witness in every particular. This furnished sufficient evidence to support the questioned finding of the trial court. That we must accept as true a finding supported by competent and material evidence and cannot reverse a judgment because of a conflict in the evidence is too elementary to need the citation of authorities.

Appellants' contention that there was a defect in the service of the two notices presents a more interesting question. Each notice was in the form of a letter addressed to appellants and others. We are not concerned with the service of the defendants other than the three trustees as they have not appealed from the judgment against them. Each of the notices was inclosed in an envelope, sent by registered mail with return receipt demanded, addressed to appellant, Fred P. Spraul, at his Los Angeles business address. Appellants maintain that the two notices should have been sent to each one of them and that their delivery to Spraul alone was not sufficient to bind the other trustees or the trust estate.

In considering this question it is necessary for us to determine the nature and extent of the estate of the trustees in the trust property. If it was joint then the service of the notice on one trustee was a sufficient service to bind all of them. (*Ellis* v. *Columbine Creamery Co.*, 83 Cal. App. 48 [256 Pac. 489, 490].)

The declaration of trust places the title to all of the trust estate in the three trustees. It requires their joint action in trust affairs and provides for the appointment of a new trustee to take the place of one resigning or becoming disqualified. There is nothing in the instrument that would even suggest an intention to vest a several estate in the trustees or any of them.

Section 2268 of the Civil Code provides as follows: "Where there are several co-trustees, all must unite in any act to bind the trust property, unless the declaration of trust otherwise provides." Section 860 of the same code provides as follows: "Where a power is vested in several persons, all must unite in its execution; but, in case any one

or more of them is dead, the power may be executed by the survivor or survivors, unless otherwise prescribed by the terms of the power.'' These two sections contain a statutory enactment of the rule existing in many of the older states of the Union that cotrustees take a joint interest in the property of the trust estate that partakes of the nature of a joint tenancy and possesses none of the attributes of a tenancy in common. (26 R. C. L. 1333, sec. 196 et seq., and cases cited.) In the case of *La Forge* v. *Binns,* 125 Ill. App. 527, it was said: ''Appellants were appointed trustees jointly. By the common law and by an express provision of the statute, the estate of trustees is held in joint tenancy.'' (See, also, *Wilbur* v. *Almy,* 12 How. 180 [13 L. Ed. 944] ; *McGeorge* v. *Bigstone Gap Imp. Co.,* 88 Fed. 599; *Fritz* v. *City Trust Co.,* 72 App. Div. 532 [76 N. Y. Supp. 625] ; affirmed, 173 N. Y. 622 [66 N. E. 1109].)

We have concluded that the service of the two notices on appellants was sufficient under the authorities cited and under *Ellis* v. *Columbine Creamery Co., supra,* where it was said: ''But assuming that the ownership by the plaintiffs was joint, the respondents question the sufficiency of the notice. In the case of *Hepburn* v. *McDowell,* 17 Serg. & R. (Pa.) 383 [17 Am. Dec. 677], it is held that notice to two or more persons engaged in a joint act is notice to all; and in *Holbrook* v. *Holbrook,* 15 Me. 9, the principle is announced that a notice given to one of two parties jointly liable is binding upon both. To the same effect, see the following authorities: *Knight* v. *Fifield,* 7 Cush. (61 Mass.) 263; *Watson* v. *Walker,* 23 N. H. 471. In the case of *Morse* v. *Aldrich,* 1 Met. (42 Mass.) 544, the syllabus contains the following statement: 'Where the owner of land, by a covenant which binds his heirs and assigns, engages to do a certain act when thereto requested, a written request to do such act, addressed to all the heirs or assigns, and seasonably delivered at the dwelling-house of one of them, is sufficient; . . . ' In the case of *Ellis* v. *Lull,* 45 N. H. 419, it is held (syllabus) : 'Where two or more persons are subject to a joint duty or obligation upon notice, and where other special notice is not made necessary by statute or by contract, a notice addressed to all and served on one is notice to all . . . ' As affecting the question of the sufficiency of the

notice with reference to a renewal of the lease, or the execution of a new lease, given by the tenant to one of such joint owners only, the principle is laid down in 7 Ruling Case Law, page 874, that such a notice is binding upon each and all of the joint owners. In discussing the difference in this regard between cotenants and joint tenants, it is said: ' . . . nor is the relation of cotenancy of such a nature that notices served on one cotenant, as, for example, of defects of title in the common property purchased, bind the remaining cotenants; but where a grant is made to several persons jointly, a notice addressed to all of them, and served on one of them is sufficient. In such case it is held that notice to one is notice to all.' ''

Each of the appellants had actual knowledge of the contents of the two notices and acted upon them. According to the testimony of two of them, to prevent a forfeiture of the lease under its terms and those of the first notice, they started what they maintained were drilling operations on the leased property shortly after the receipt of this notice. They suspended these operations after the second notice was served.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.