[Civ. No. 5455. Third Appellate District.—November 25, 1935.]

A. D. DEVONSHIRE et al., Appellants, v. WILLIAM E. LANGSTAFF et al., Respondents.

Morin, Newell, Brown & Hamill for Appellants.

A. G. Allen for Respondents.

PULLEN, P. J.—In 1927 plaintiffs and appellants herein, who will hereafter be known as lessors, entered into a lease with respondents whom we will hereafter refer to as lessees.

As a part of the arrangement in the lease lessees also entered into a declaration of trust wherein they pledged with First Trust and Savings Bank of Pasadena certain stock as security for the performance of the obligations of the lease.

Unpaid rentals accrued under the lease on April 1 and on May 1, 1933. Lessees also failed to pay certain taxes provided for in the lease, which had become delinquent December 5, 1932.

The important provision of the lease is known as paragraph VIII, which reads as follows:

"In case Lessees shall fail to perform any condition, covenant or obligation under the terms of this lease, Lessors may at their election either expend such sum as may be necessarily required in meeting the breach of such covenant, and thereafter maintain an action against the Lessees for the amount of said disbursement, together with interest, costs and reasonable attorney's fee; or at the election of Lessors, Lessors may terminate this lease by notifying Lessees not less than thirty days prior to the date of the proposed termination of the fact of said breach and of the purpose of Lessors so to terminate, and at the expiration of said period of thirty days following a period of sixty days after the fact of breach, the lease shall terminate *ipso facto,* and without further act on the part of Lessors, and under these circumstances Lessees shall place Lessors in full possession of the premises and every part thereof. In case of any action at law necessarily or reasonably begun or maintained by Lessors in or about any right pertaining to this lease, the Lessees shall, in addition to any other relief awarded Lessors, pay all court costs and a reasonable attorney's fee.

"In addition to the foregoing remedies, and notwithstanding them, Lessors shall have all rights otherwise expressed or implied in this lease, to bring an action for the collection of rentals, and to provisional remedies appropriate thereto, including attachment, and to all other appropriate actions in the premises, and in addition to the recovery of the relief otherwise due Lessors, with costs, there shall become due and payable reasonable counsel fee."

On the thirteenth day of April, 1933, lessors issued a notice in writing addressed to and served upon lessees, reading as follows:

"To William E. Langstaff and Flora I. Langstaff:

"You Will Please Take Notice that the undersigned, pursuant to paragraph VIII of that certain Lease dated the 1st day of November, 1927, where you leased from the undersigned that certain real property situate in the City of Pasadena, County of Los Angeles, State of California, described as follows: . . . which lease was recorded on the 3rd. day of December, 1927, in Book 7761, at Page 115 of Official Records of Los Angeles County, have elected to terminate said Lease on account of your failure to carry out certain of the obligations thereof, to-wit: Your failure to pay the first installment of the Los Angeles County taxes for the year 1932–1933, on said property hereinabove described which installment of taxes became delinquent on the 5th day of December, 1932, and your failure to pay the City of Pasadena taxes for the year 1932 on said property, which City of Pasadena taxes became delinquent on the 8th day of February, 1933. This is intended as a thirty (30) day notice as provided for in said Paragraph VIII of said lease.

"Dated this 13th. day of April, 1933.

"A. D. DEVONSHIRE
"MARY L. DEVONSHIRE."

On April 29, 1933, lessors issued a subsequent notice in writing to lessees attempting to recall, reconsider and rescind the notice of April 13, 1933. Thereafter, in May of 1933, lessors paid all taxes and notified the First Trust and Savings Bank of Pasadena, as trustee, of the defaults in the payment of the taxes and rentals and demanded the sale of enough of the securities in pledge with the trustee to pay lessors the amount of said taxes and rentals due and unpaid.

On May 11, 1933, lessees sent a written communication to lessors purporting to consent to the cancellation and termination of the lease as of May 12, 1933, and also, on May 11, 1933, notified their subtenant henceforth to attorn to lessors because of the termination of the lease by lessors. Lessors immediately rejected the purported acceptance and rejected an offer of the subtenants to establish a relationship with them upon the basis that the lessees' lease was terminated.

Appellant claims that the judgment in favor of defendant can be sustained only upon the doctrine of election or the doctrine of conditional limitation, and then cites numer-

ous authorities to show that neither doctrine is applicable to the case at bar. However, the judgment need not rest upon either doctrine suggested by appellant, but rather upon the contractual relationship of the parties and their specified method of termination of the lease. There is nothing stipulated in the lease that is beyond the power of the parties. There is nothing in the contractual provision for the termination of the lease that violates any rule of public policy, and that parties may, in their lease, provide for the termination thereof upon notice different from and superseding that prescribed by the code is well established. (*Conner* v. *Jones,* 28 Cal. 59, 60; *Watkins* v. *McCartney,* 57 Cal. App. 643 [207 Pac. 909]; *Buhman* v. *Nickels & Brown Bros.,* 1 Cal. App. 266 [82 Pac. 85]; *Jameson* v. *Chanslor-Canfield Midway Oil Co.,* 176 Cal. 1 [167 Pac. 369]; *Wisner* v. *Richards,* 62 Wash. 429 [113 Pac. 1090, Ann. Cas. 1912D, 160]; sec. 1946, Civ. Code.)

If, therefore, the parties could by agreement, waive compliance with the sections of the Civil Code prescribing notice, then we need not concern ourselves with the requirements of the various code sections dealing with notice of termination of lease.

Neither are we concerned with the element of forfeiture. If the provision for the termination of the lease is a lawful subject of contract undoubtedly it was embodied in the present lease for the benefit of the lessors; if forfeiture is in any way involved it is the forfeiture of the leasehold interest of the tenant. But here the tenant, the party against whom the forfeiture would operate, has raised no issue of forfeiture and is not claiming any rights under the principles of law or equity applicable to forfeiture. Lessors, therefore, being beneficiaries under the terms of the lease as to forfeiture, assuming it is found, cannot be heard to complain or raise the issue, it affecting only the rights of the lessees.

An examination of the lease also discloses that the method selected for repossessing the property of the lessors was not the only remedy provided in the lease, for lessors had reserved all the remedies provided by law, including the right to serve a three-day notice as provided in section 1161 of the Code of Civil Procedure, clearly indicating that the parties contemplated, in their contractual agreement, methods other than the statutory means of termination of

the lease. Under the terms of the lease and the method chosen by lessors to recover their property they could, after lessees had been in default for sixty days, serve a thirty-day notice to vacate; during the prior sixty days of default lessees could, at any time, by paying the rentals and taxes due, restore themselves to good standing, but after service of the thirty-day notice they had no further option in the matter. It then became lessees' duty to arrange for their own removal. Although the record is silent as to any steps taken by them during this period, we must assume they were preparing to comply with the terms of their agreement. It was not required of them that they notify lessors of their intention to move or that they would comply with the agreement; they had by joining in the execution thereof, consented thereto. The notice of acceptance sent by lessees to lessors notifying lessors that they would surrender the premises on the day specified in lessors' notice, was immaterial. If, therefore, lessees had no alternative under the thirty-day provision in the lease, it would manifestly be unfair for the court to read into the contract any such right on the part of the lessors. Also if the lessors could withdraw their notice of cancellation after it was issued, they could serve notice of cancellation each month, and at the end of the twenty-ninth day withdraw the same and reduce the estate of the lessees from a tenancy of years to a tenancy at will,—clearly not the intention of the lease.

Tiffany on Landlord and Tenant, page 1462, concerning the withdrawal or waiver of notice to quit, says:

"It has been decided in England that a party who has given a notice to quit cannot afterwards withdraw or 'waive' such notice without the assent of the other party to the tenancy, that is, that a notice once given operates to terminate the tenancy at the time therein specified unless both parties consent that it shall not so operate. Presumably the courts of this country would take a like view, but the question appears never to have been presented. (*Western Union Tel. Co.* v. *Pennsylvania R. Co.*, 120 Fed. 362.)"

Likewise 1 Wood, Landlord and Tenant, second edition, section 44, states the rule:

"When a valid notice to quit is given by landlord or tenant the party to whom it is given is entitled to count upon it and it cannot be withdrawn without the consent of both parties."

In *Western Union Tel. Co.* v. *Pennsylvania R. Co., supra,* it is said:

"It will be observed that withdrawal of a notice to quit is not, like a waiver of forfeiture, the act of one party but requires the assent of both and when such a joint assent is given it creates a new tenancy. The question, then, whether there was a waiver of a notice to quit, is one of intent on the part of both parties to the tenancy. 'When a valid notice to quit is given by the landlord or tenant the party to whom it is given is entitled to count upon it, and it cannot be withdrawn without the consent of both parties. If such consent is given, there is a new agreement between the parties and a new tenancy is created, which exists only under that new agreement.'"

Appellants have presented a learned brief in support of their contention, but mistakenly, as we believe, assert that the rights of the parties hereto are governed by the provisions of section 1161 of the Code of Civil Procedure. For that reason we have not attempted to consider the many authorities cited. We are of the opinion, answering the contention of appellants, a landlord may not, under a fixed term lease, withdraw a notice of termination previously issued, because of breach of covenant, prior to the time of termination as fixed in his notice, so as to effect a continuation of the lease relationship.

The judgment is affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 23, 1936.