[Civ. No. 13588.   Second Dist., Div. Three.   Oct. 30, 1942.]

ALPHONZO E. BELL CORPORATION (a Corporation), Respondent, v. K. L. LISTLE, Appellant.

Maddox & Vaughn and Chandler & Wright for Appellant.

Overton, Lyman & Plumb, Donald H. Ford and Irving H. Prince for Respondent.

SHINN, J.—The appeal which is before us was taken by K. L. Listle (sometimes referred to herein as defendant) from a judgment quieting plaintiff's title against claims of interest in real property asserted by defendants under an oil lease. The judgment purports to rest upon findings that defendants breached their lease by failing to prosecute work thereunder and failing to resume and diligently pursue work in conformity with the requirements of the lease after notice of default given by the lessor.

We have given the findings the most liberal construction possible within reasonable limits, as we should (*Mardesich* v. *C. J. Hendry Co.*, (1942) 51 Cal.App.2d 567, 573 [125 P.2d 595]) and have been unable to satisfy ourselves that they are sufficient to support the judgment. Furthermore, the essential finding as to the date when defendant was served with notice of default is not supported by the evidence. For these reasons the judgment must be reversed.

Plaintiff leased a parcel of land to defendant (Mrs.) K. L. Listle, who assigned to Frank Barton, who in turn assigned to Sun-Bell Drilling Co. Mrs. Listle thereafter issued royalty interests to others of the defendants. The lease was reassigned to her after cessation of work on a well by Sun-Bell.

Sun-Bell started a well in August, 1939, drilled to about 3,000 feet and ceased work September 27, 1939. Defendants were given a notice by plaintiff lessor dated October 26, 1939, setting forth the cessation of work on September 27 and demanding a resumption of drilling within 60 days after service of notice as provided in the lease.

The lease, which was dated November 17, 1937, provided in paragraph X that the lessee should commence drilling

operations within four and one-half years after that date and prosecute the same "with reasonable diligence until oil or gas is found in paying quantities or to a depth at which drilling would, in the judgment of the lessee, be unprofitable." It provided, "The words 'drilling operations' as used in this lease shall be held to mean any work or actual operations undertaken or commenced in good faith for the purpose of carrying out any of the rights, privileges or duties of the Lessee under this lease, followed diligently and in due course by the construction of a derrick and other necessary structures for the drilling of an oil or gas well, and by the actual operation of drilling in the ground. . . . Upon the violation of any of the terms or conditions of this lease by the Lessee and the failure to begin to remedy and continue the same to completion with diligence within 60 days after written notice from the Lessor so to do, then, at the option of the Lessor, this lease shall forthwith cease and terminate, and all rights of the Lessee in and to said land be at an end . . ."

An amendment of the lease, dated May 4, 1939, provided as follows: "The Lessee agrees to commence drilling operations on said land on or before August 15, 1939, and thereafter to prosecute the same continuously and diligently until oil or gas is found in paying quantities, or she may at any time within said period terminate this lease and surrender said land as hereinafter provided. . . ."

On the same date letters were exchanged between plaintiff and defendant by which it was agreed that plaintiff would within 30 days erect on the property a steel derrick at least 122 feet in height, would provide for a period of 12 months from the date drilling operations were commenced such water as a certain water well of plaintiff's would produce, would provide all fuel necessary for the drilling operations, would provide a rotary outfit complete with three boilers and fittings, one string of drill pipe of a size to be selected by the lessee, and 475 feet of suitable 15-inch casing which would meet the requirements of the Division of Oil and Gas; title to the rotary outfit, boilers, fittings and drill pipe was to remain in plaintiff and title to the derrick and casing to remain in plaintiff until paid for out of an agreed percentage of production of oil and gas. There was a substitution of 13¾-inch for 15-inch casing and there was some question concerning the furnishing of water as agreed, but

except for these deviations from the agreement (which are of no moment on the appeal), it is not contended that plaintiff failed to provide the derrick and other equipment specified in the agreement.

It is not seriously contended by defendant, nor could it be so contended, that there was not a cessation of work and failure to resume work between September 27 and December 27, as alleged by plaintiff. The complaint further alleged, ''That pursuant to the provisions of said oil and gas lease above described plaintiff, during the period from *October 28 to October 30, 1939,* did serve defendants K. L. Listle, J. I. Listle, Sun-Bell Drilling Company, Frank P. Barton, Wm. MacKenzie Brown, Robert Barlow, James A. Hague, Vernon G. Monte, Jeanne V. V. Helbush with notice of default under said oil and gas lease, which notice did specify that on September 27, 1939 drilling on said land was stopped and the well since that date has been standing idle and because of the cessation of operations drilling had not been prosecuted with reasonable diligence as provided in the terms of said lease. Demand was made that said default be remedied by the resumption of diligent drilling operations within sixty days from the date of service of said notice.'' It was further alleged, ''That defendants and each of them failed to remedy said default specified in said notice within said sixty days' period and they and each of them failed to resume drilling operations with diligence within said period and by reason of said default and said failure plaintiff, during the period from January 17 to January 20, 1940, did serve each of the persons above named in paragraph XIII as the persons to whom notices of default had been sent, with a notice of termination of any interest that they might have or claim to have had in the oil and gas lease above described and in and to the real property described in paragraph IV hereof.''

The court found that the allegations of paragraph XI of the complaint were true, which paragraph reads as follows: ''That drilling operations were commenced on said property on or about August 11, 1939. That said defendants breached said covenants as described in paragraph X hereof in that they failed to prosecute drilling operations on said leased premises with reasonable diligence until oil or gas was found in paying quantities, or to a depth at which further drilling would in her judgment prove unprofitable.'' And made fur-

ther findings reading as follows: "The Court finds that pursuant to the provisions of said Oil and Gas Lease entered into between the plaintiff and the said defendant K. L. Listle, the plaintiff, on *October 26, 1939,* served defendants K. L. Listle, J. I. Listle, Sun-Bell Drilling Company, Frank P. Barton, Wm. MacKenzie Brown, Robert Barlow, James A. Hague, Vernon G. Monte and Jeanne V. V. Helbush with a notice of default under said Oil and Gas Lease, which notice specified that on September 27, 1939, drilling on said land was stopped and the well since that date has been standing idle and because of the cessation of operations, drilling had not been prosecuted with reasonable diligence, as provided in the terms of said lease. The Court also finds that demand was made that said default be remedied by the resumption of diligent drilling operations within sixty days from the date of service of said notice. . . . The Court finds that the defendants, and each of them, failed to remedy said default specified in said notice within *said* sixty days period and they, and each of them, failed to resume drilling operations with diligence, or at all, within *said* period and by reason of said default and said failure plaintiff, during the period from January 16 to January 20, 1940, served each of the persons above named in Paragraph XIII of plaintiff's Complaint, as the persons to whom notices of default had been sent, with a notice of termination of any interest that they might have or claim to have had in the Oil and Gas Lease above described and in and to the real property hereinabove described."

■ Defendant resumed work on the well December 27, 1939. If she had been "served" with notice on or after October 28, as alleged in the complaint, her time would have expired with December 27 or later; if service was on October 26, as found by the court, her last day would have been December 26. The finding that notice of default was served upon defendant on October 26 is without support in the evidence. The notice was mailed at Los Angeles, October 26. There was undisputed evidence that appellant Listle, who was in Lompoc at the time, did not actually receive a copy of the notice until October 28, although it did appear that other copies of the notice were addressed to her in care of her attorney at Los Angeles and to another Los Angeles address. The finding that the notices were served on October 26 was in direct conflict with the allegation of the complaint,

and it had the effect of advancing the date for resumption of work to December 26. We cannot understand the finding as determining anything more than that defendants did not resume work on or before December 26, 1939. It was contended by plaintiff at the trial that the notice became effective on the date of its mailing and the court appears to have taken that view of the law.

Defendant contends that she was entitled to one additional day and one more day for each 100 miles of distance between the points where the notice was mailed (Los Angeles) and where it was received (Lompoc), which is more than 100 miles. Her last day would have been December 27 under this theory. Reliance is placed upon section 1013 of the Code of Civil Procedure, which provides for such extended time where notices are served by mail, but the provision relates only to the subject matter of the chapter of the code in which it appears and which deals with notices and filing and service of papers; it does not apply to notices generally which are required to be given under Civil Code sections, independently of pending actions (*Colyear* v. *Tobriner*, (1936) 7 Cal.2d 735 [62 P.2d 741, 109 A.L.R. 191]), and of course would not apply to notices called for by private contracts which fail to provide for service by mail.

However, there are two good reasons why resumption of work on December 27 would have been timely. In the first place the lease did not provide for notice by mail and in the absence of such a provision it should be construed as requiring the lessor to give the lessee personal notice of default (see *Williams* v. *Bergin*, (1895) 108 Cal. 166, 171 [41 P. 287]; *Stockton Automobile Co.* v. *Confer*, (1908) 154 Cal. 402 [97 P. 881]; *Long* v. *Chronicle Pub. Co.*, (1924) 68 Cal.App. 171 [228 P. 873]). Although two notices were mailed to appellant at Los Angeles addresses, plaintiff relies upon the one addressed to her at Lompoc.

An additional reason why the finding that defendant forfeited her lease through failure to resume work by December 26 cannot be sustained results from the construction which plaintiff placed upon its notice and upon defendant's obligation to resume work. Plaintiff's conduct on and after December 27, as hereinafter related, was such as to estop it from insisting that defendant's time expired on December 26. On December 27 defendant employed men to resume

work on the well. The boilers were fired up preparatory to setting a cement plug in the well for the purpose of making a test for water. Fifteen feet of cement were poured into 8⅝-inch casing and the setting of the plug was completed on December 28.

On December 27 plaintiff notified defendant that the boilers were in bad and dangerous condition and told defendant's husband that he would or could be arrested if he used them without their being repaired. Plaintiff's vice-president, in charge of oil operations, testified that he had had a conversation with J. I. Listle, defendant's husband, on December 28, in which he asked Mr. Listle "where he expected to place the plug in the well that he intended to put there" and that the conversation at that time concerning the boilers "was to this effect: that the boilers were not to be used until they were repaired. After that it was all right for them to go ahead. We considered them hazardous." On January 3, at defendant's request, the boilers were inspected and on January 10 the inspector reported that they needed certain repairs. However, as early as January 6 defendant had set about to have them repaired. The flues were rolled, changes were made in the manifolds and in the pipes on top of the boilers. This work was commenced January 6 and was finished on January 15 or 16. One of defendant's employees also washed out the boilers between January 8 and January 10 at the same time the manifolds were being fixed. Plaintiff knew about these operations.

There was a string of 8⅝-inch casing in the hole to about 2,300 feet which Sun-Bell had purchased on conditional sales contract and had failed to pay for. The seller having demanded payment or return of the casing, plaintiff, some time before December 27, had purchased the casing for the sum of $1,431.25 to prevent its removal from the well. On December 27 plaintiff notified defendant in writing that it owned the casing and that she could not use it until she had paid plaintiff for the same. Plaintiff made no objection to defendant's entering upon the property on December 27 and did not contend then any more than it contended at the time the complaint was filed that defendant's time had expired on December 26. No protest was made to defendant between December 27 and January 16 against her

continuing work on the well, and it is obvious that both parties considered during that period that defendant was not obliged to resume drilling before December 27. In fact, the written notices delivered to defendant on the 27th respecting payment for the casing and the expressed permission to make use of the boilers constituted conditional invitations for defendant to resume work. Defendant did repair the boilers as required, and while she did not pay for the casing, there was evidence that her husband, who was in charge of operations, promised to pay for it and defendant was allowed to use it without further protest. In addition to that, plaintiff continued to furnish water to defendant during this period for her operations on the well.

On January 16 plaintiff mailed to defendants the notice of termination of the lease above referred to. After that defendant did sporadic work on the well up until the institution of this action on February 23. The well was tested for water shut-off, one of defendant's employees worked for three days on the 29th, 30th and 31st of January, the well was bailed on or about the 19th of February and about that time the tools were run in the hole and some additional hole was drilled, notwithstanding the service of the notice of January 16. On February 21 defendant was ordered off the property.

A specific finding whether defendant's work as commenced on December 27 constituted the resumption of drilling operations was indispensable to a determination of the issues on trial. No finding was made upon this issue. The general finding that defendant failed to prosecute the work of drilling diligently, which we have quoted above, is not sufficient. The allegation to that effect, as contained in the complaint, immediately precedes the allegation as to the giving of the October 26 notice, and in the findings the period referred to undoubtedly is that which preceded October 26 as the next finding refers to the giving of the notice. Furthermore, it is only a finding that defendants breached the covenant to drill continuously, and not a finding that they failed to remedy their default. The findings with relation to the failure to resume drilling operations within the 60-day period are specific. The finding of breach of covenant does not relate to the resumption of drilling operations but only to cessation of work and it cannot be con-

strued as sufficient to overcome the obvious omission of a finding as to the good faith of defendant and the sufficiency of the work commenced on December 27 to remedy her default. A judgment unsupported by the findings cannot stand. (*Cargnani* v. *Cargnani,* (1911) 16 Cal.App. 96, 99 [116 P. 306]; *Adams* v. *Helbing,* (1895) 107 Cal. 298, 301 [40 P. 422].)

We might have a definite opinion whether defendant's resumption of work was sufficient to remedy her default but if we had one it would not enable us to uphold the judgment unless we could say as a matter of law that the finding would have to be against defendant. We cannot do this. The drilling of an oil well does not consist alone of turning a bit in the hole; there are many other essential operations which constitute actual drilling of the well. There are also many operations which, if indulged in needlessly, would be a mere pretense of drilling. The element of good faith is of great importance to the trier of facts. For all we know, the trial judge may have believed that defendant in good faith resumed drilling on December 27 but that she was a day late, or he may have believed the contrary. Plaintiff cannot insist on the date of December 26 but can insist that the operations of defendant were not sufficient to constitute the resumption of drilling the well and the court will have to decide that question. ■ If the court should find that defendant did resume drilling operations, within the meaning of the lease, on December 27, she would be held to have remedied her default. A subsequent default would have required a new notice. (*Smith* v. *Edelman,* (1931) 214 Cal. 488 [6 P.2d 508].) If she made a mere pretense of resuming drilling operations (and in this connection the question of good faith is an element to be considered) she would be held to have failed to remedy the default. We cannot say upon the record now before us that all of the substantial evidence was on one side of this issue, which is the crucial one in the case and can be determined only by a retrial.

■ We have not overlooked plaintiff's contention that under the amendment of the lease cessation of drilling would work a forfeiture, without notice thereof from the lessor or time within which to remedy the default. We should read the lease and the amendment as a single instrument, as plaintiff did when giving the notice, and as the trial court did; when

so read there was no waiver of the right to receive notice. The amendment purported to do nothing but advance the date for commencement of drilling.

The judgment is reversed.

Schauer, P. J., and Wood (Parker), J., concurred.