[Civ. No. 3598. Fourth Dist. Apr. 8, 1948.]

RESERVE OIL AND GAS COMPANY (a Corporation) et al., Respondents, v. M. METZENBAUM et al., Defendants; WALTER METZENBAUM et al., Appellants.

Walter Metzenbaum, in pro. per., for Appellants.

Morrison, Hohfeld, Foerster, Shuman & Clark and Alfred L. Gibson for Respondents.

GRIFFIN, J.—This is an action to quiet title of plaintiffs and respondents in and to 410 acres of oil and gas leasehold interests covering 460 acres in the aggregate.

The complaint was filed on June 8, 1946. Defendants and appellants appeared by answer, denied plaintiffs' ownership and right of possession and set up, as substantiating their claim, that they had a one-half interest, by reason of a partnership existing between defendant and appellant Walter Metzenbaum and defendant M. Metzenbaum, in an agreement and assignment of interest by plaintiffs of a portion of the original lease, dated February 14, 1944. M. and Miriam Metzenbaum appeared by answer but failed to appear at the time of trial. Judgment went against them. They are not appealing. Other defendants filed disclaimers.

The factual background, as disclosed by the evidence, shows that on December 20, 1940, Tejon Ranch Company, as lessor, leased to plaintiff Reserve Oil and Gas Company, for a term of five years, and so long thereafter as oil was produced, certain lands in Kern County. A one-half interest in said lease was subsequently assigned to respondents Edwin W. and Barbara J. Pauley. On February 14, 1944, all plaintiffs entered into an assignment and agreement with M. Metzenbaum and Miriam Metzenbaum, covering the 460 acres of land involved in this action. On January 6, 1945, defendants M. Metzenbaum and Miriam Metzenbaum entered into a sublease with the defendant Hilo Oil Company, subleasing 300 acres of the 460-acre tract covered by the February 14, 1944 assignment. Prior to January 6, 1945, defendant M. Metzenbaum drilled and completed a producing gas well on a portion of the land held under his sublease. Subsequently, between March 11, 1945, and September 8, 1945, Hilo Oil Company drilled and completed four wells. In the assignment of February 14, 1944, from plaintiffs to defendants M. and Miriam Metzenbaum, it was provided in paragraph 3 that the sublessees should drill a test well and that if this should not produce oil and gas in paying quantities, then the sublessees were obligated, within 60 days after the completion or abandonment of the test well, to commence drilling a second well or else reassign the lease to plaintiffs. The same paragraph of the assignment further provided that if oil and gas was found in paying quantities the sublessees "shall continue to drill additional wells on said lands as rapidly as one string of tools working with reasonable diligence can complete them until there shall

have been drilled and completed on said lands as many wells, having producing intervals of less than three thousand (3,000) feet in depth . . . as shall equal the total acreage held by second parties hereunder divided by ten (10), and as many wells, having producing intervals of three thousand (3,000) feet or more in depth measured from the derrick floor, as shall equal the total acreage held by second parties hereunder divided by twenty (20); . . ."

The evidence shows and the court found that all the wells drilled by the sublessees on the land had and have producing intervals of less than 3,000 feet, and that no further wells were ever drilled or completed by any of the sublessees herein, on any of the lands at any time thereafter. On April 6, 1946, plaintiff Reserve Oil and Gas Company served upon all defendants herein a notice of default and of termination of the lease of February 14, 1944, by registered mail. It should be noted here that the notice of default and termination of lease did not relate to the five wells drilled by the sublessees and their sublessee Hilo Oil Company and 10 acres surrounding each such well. It is pointed out that those wells and the 10 acres surrounding each well are not involved here as, under the terms of the agreement of February 14, 1944, the sublessees are entitled to retain those wells and 10 acres surrounding each of them. The findings show that no further drilling or attempt to drill by any of the defendants herein upon any of the property in question took place *after the service of the notice and prior to the commencement of this action.*

The trial court found that the defendants and appellants were in default; that their lease, ever since May 7, 1946, was of no legal force and effect, and concluded that the plaintiffs were entitled to a judgment quieting their title.

At the trial appellants contended, not that they had complied with the terms and conditions of the assignment of February 14, 1944, and not that any of the wells drilled satisfied any of their obligations under the lease, but contended only that the notice of default and of termination of the lease served upon them was insufficient, and further, that upon the theory of "severance" the appellants, in any event, and regardless of their breach of the conditions of the sublease, were entitled to retain possession of the property without drilling.

The agreement of February 14, 1944, in reference to default, notice and forfeiture, provides that upon the violation

of any of the terms of the assignment and agreement by said lessees and their failure to remedy such default within 30 days "after written notice from Reserve Oil Company so to do then" at its option, the assignment and agreement shall forthwith cease and terminate and all rights of sublessees shall be at an end, except as to 10 acres surrounding each producing or drilling well in respect to which sublessee shall not be in default. The sublessees, in that agreement, assumed and agreed to perform all of the terms and conditions of the original oil and gas lease dated December 20, 1940, with respect to the lands described in the sublease of February 14, 1944. The written "Notice of Default" provided that "you are in default in the performance of the terms and conditions of that certain assignment and agreement . . . in that you . . . failed . . . for more than sixty (60) days from the date of completion of the last well drilled by you upon the land described in said assignment and agreement to 'continue to drill additional wells' . . . and that upon your failure to remedy such default within thirty (30) days after this notice by commencing actual drilling in the ground of an additional well upon said land and thereafter to prosecute the drilling thereof with reasonable diligence, the undersigned elects to declare, and *does hereby declare,* said assignment and agreement terminated . . . and upon failure of you to remedy said default as aforesaid, demand is hereby made upon you to quietly and peaceably surrender possession. . . ." Signed: "Reserve Oil and Gas Company. . ." (Italics ours.)

An affidavit in evidence shows that such "Notice of Default" was mailed to appellants at their address, by registered mail, and a return receipt therefor was appropriately signed, line 1, "W. Metzenbaum"; line 2, "I. Kaine (Signature of Addressee's Agent . . .) Date of Delivery 4/4/46." Another such return receipt was signed "Walter Metzenbaum, per Victor Metzenbaum, (Signature of Addressee's Agent. . . .) Date of delivery 4/8/1946."

 Appellant's main argument is that since the lease provides for a "Notice of Default" but does not provide that such notice may be given by mail, such notice must be personally served on the persons in default, citing such cases as *Alphonzo E. Bell Corp.* v. *Listle,* 55 Cal.App.2d 300 [130 P.2d 251]; *Long* v. *Chronicle Publishing Co.,* 68 Cal.App. 171, 179 [228 P. 873]; *Williams* v. *Bergin,* 108 Cal. 166, 171 [41 P. 287].

Plaintiffs cite *Colyear* v. *Tobriner,* 7 Cal.2d 735, 743 [62 P.2d 741, 109 A.L.R. 191].

Appellants have appealed on the judgment roll only and they included in the notice to the clerk to prepare a transcript a request that the exhibits introduced in evidence be included in the record on appeal. These exhibits include among them, the original lease of December 20, 1940, the assignment and agreement of February 14, 1944, and a copy of the "Notice of Default" with affidavit of service, as indicated.

The trial court found, from all the evidence produced, that on April 6, 1946, plaintiffs "served upon all defendants herein a good, valid and sufficient notice of default and of termination of the said lease of February 14, 1944," and at the time of the filing of this action all defendants were in default under the agreement and that no wells were drilled upon said lands after September 8, 1945.

There is no evidence and there is no contention made that appellants did not receive the "Notice of Default" as indicated by the proof of service.

It should be here noted that the assignment and agreement of February 14, 1944, does not require that the notice of default be personally served upon the lessees, but only requires that the Reserve Oil and Gas Company give *written notice* to remedy such default, and on their failure to do so, at the option of the company, the agreement shall forthwith terminate.

In *Conrad* v. *Hawk,* 122 Cal.App. 649 [10 P.2d 534], under a similar claimed default, notice of such default and termination of lease was served by registered mail and such method of service was upheld. To the same effect is *Wright* v. *Western States Life Insurance Co.,* 61 Cal.App. 488 [214 P. 990]. There the insured was permitted to make an election "by written notice to the company" and it was held that a letter addressed to the company at its home office and deposited in the post office, postage prepaid, was sufficient compliance with the provisions of the policy, and the receipt of such notice by the company was presumed, citing section 1963, Code of Civil Procedure, subdivision 24, and *Stockton etc. Works* v. *Houser,* 109 Cal. 1 [41 P. 809].

Appellants cite the rule applicable to notice of termination of tenancy under such sections as 827 and 1946 of the Civil Code, and a statement in *Alphonzo E. Bell Corp.* v. *Listle,* 55 Cal.App.2d 300 [130 P.2d 251], where it is said, quoting from the syllabus: "Where an oil lease does not provide for

notice of default by mail it should be construed as requiring the lessor to give the lessee personal notice of default.''

In *Colyear* v. *Tobriner, supra,* at page 743, it was, as to those sections of the Civil Code above mentioned, stated: ''As to the matter of notice, it may be said that where a statute requires notice and does not specify how it shall be given, the presumption is that personal service is required. . . . The post office department, as well as any other type of messenger, may be used to effect personal service,'' citing *Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863], where it was held that the receipt of a notice served by mail is legally equivalent to a personal service; and *Heinlen* v. *Heilbron,* 94 Cal. 636 [30 P. 8], which is to the same effect.

In the Alphonzo E. Bell Corporation case, *supra,* relied upon by appellants, the notice of default was mailed by registered mail but was not received by the defendants until a much later date. A default was declared after 60 days from the date of mailing, but within the 60-day period from the date the notice was *received* and there was evidence that work had been resumed before the expiration of the 60 days from the date the notice was received. There is nothing in that case which holds that personal service could not be made by registered mail. We must therefore conclude that the method of giving defendants notice of default in the instant case was proper. (*First National Bank* v. *Coast Consolidated Oil Co., ante,* p. 250 [190 P.2d 214].) Since there has been a showing, not only by presumption but factually, that defendants did *receive* such notice and that they failed to remedy the default claimed, no prejudice resulted by reason of the method adopted in giving such notice.

The next argument is that even though notice of default was served and the time to remedy such breach had expired, an additional notice was required declaring that the lease was forfeited before plaintiffs had a cause of action, citing Amsbury and Jones Work on ''Oil & Gas Law of California'' pages 78 and 79; *Calhoma Oil Corp.* v. *Conniff,* 207 Cal. 648 [279 P. 771]; *Conrad* v. *Hawk,* 122 Cal.App. 649 [10 P.2d 534; and 15 Cal.Jur. § 197, p. 779; and other cases arising under Code Civ. Proc., § 1161.

It should be noted here that this is an action to quiet title and the notice itself provided that appellants ''were in default'' in the premises described and upon their failure to remedy it within 30 days ''after this notice'' plaintiff Reserve Oil and Gas Company ''elects to declare'' and *''does hereby*

*declare"* said agreement terminated. Defendants knew, as well as plaintiffs, that the default had not been corrected, and likewise knew from said notice that as a result thereof plaintiff elected to declare and did thereby declare said agreement terminated.

In *Hanes* v. *Coffee*, 212 Cal. 777 [300 P. 963], which was an action to quiet title, and in which the defendant set up an interest in the property under a lease by which he was given the exclusive right to prospect for and develop oil, gas and other hydrocarbon substances on the property, the contention was made that the proceeding to quiet title was improper for lack of notice of the termination of the lease as required by the statute. It was there held that such contention could not be maintained, as the landlord's remedy of ejectment, unlawful detainer and quiet title are distinct, and the statutory notice provided for in section 1161 of the Code of Civil Procedure is unnecessary in an action to quiet title, citing cases.

Even in *Calhoma Oil Corp.* v. *Conniff, supra,* relied upon by appellants, it is stated in the syllabus that "In such action, assuming only that the lessors of the land should have given some other or further notice than the one given declaring a forfeiture of the lease, any defect in or failure of demand or notice may be regarded as having been waived by the lessee, where the lessee all along contested the right of the lessors to claim possession." (See, also, *Williams* v. *Edge,* 192 Cal. 254 [219 P. 747] ; *Taylor* v. *Hamilton,* 194 Cal. 768 [230 P. 656] ; *Stetson* v. *Orland Oil Syndicate, Ltd.,* 42 Cal.App.2d 139 [108 P.2d 463].)

Even if it could be claimed that an additional notice of plaintiff's election to terminate the lease upon failure to cure the default was necessary, the filing of the complaint and service of summons on defendants constituted an election on the part of plaintiffs of their declaration. (*Danielson* v. *Neal,* 164 Cal. 748 [130 P. 716] ; *Schutt* v. *Scott,* 62 Cal.App. 539 [217 P. 565] ; *Neuhaus* v. *Norgard,* 140 Cal.App. 735, 740 [35 P.2d 1039] ; *Allan* v. *Guaranty Oil Co.,* 176 Cal. 421 [168 P. 884] ; *Moon* v. *Marker,* 26 Cal.App.2d 33 [78 P.2d 460].)

In *House* v. *Piercy,* 181 Cal. 247 [183 P. 807], it is said, quoting from syllabus number 5: "If the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract . . ."

There is no merit to the next point raised by appellants that a notice of default signed by the Reserve Oil and Gas

Company alone was insufficient because there was more than one lessor and that the failure of all lessors to join in the notice was fatal as to its effectiveness. The agreement of February 14, 1944 specifically provides that the failure of the appellants to remedy such default within 30 days "after written notice from Reserve Oil and Gas Company to do so" shall terminate the agreement "at the option of Reserve Oil and Gas Company." Obviously, the parties, by their contract, provided that the notice of default should be given by the company only and that the Pauleys did not have to join therein. The rights or obligations of the parties in this case must be measured by what the lease actually provides and the case of *Jameson* v. *Chanslor-Canfield M. Oil Co.*, 176 Cal. 1 [167 P. 369], relied upon by appellants, is factually different and not in point. When parties have provided by their agreement that notice shall be given in a particular way, notice given in such manner is binding and sufficient. (*Devonshire* v. *Langstaff*, 10 Cal.App.2d 369 [51 P.2d 902]; *Moon* v. *Marker, supra.*)

Lastly, appellants contend that by reason of the agreement of January 6, 1945, whereby appellants subleased 300 acres of the 460-acre tract involved in this action to the Hilo Oil Company, there was a severance of the 300-acre tract from the 460-acre tract and that by reason thereof they have been relieved of the obligation of drilling wells on their retained portion of the lease. This contention depends upon the wording of the master lease, the consent appended to the agreement of January 6, 1945, signed by the Tejon Ranch Company and the consent appended thereto signed by Reserve Oil and Gas Company and the Pauleys. The master lease provided for assignment in whole or in parts and that such holdings would constitute separate holdings and the holder thereof would be required to comply with and perform the lessees' obligations under the lease, to the extent of his portion of the lease. In the event of default, as applied to any such portion so assigned, such default should not operate to defeat this lease in so far as it covers the parts retained by lessee or then held by any assignee upon which there is no default. The consent signed by the company and the Pauleys is that they ". . . hereby consent to the foregoing sublease and agree to a severance and separate holding of said subleased premises . . . and do hereby agree that a default with respect to any portion of the leased premises other than said subleased premises shall not constitute a default as to said subleased premises." However, there is a second paragraph of the consent which reads: "This

consent shall be without prejudice to any right, title or interest of the undersigned in and to the subleased premises under and by virtue of said lease of December 20, 1940, and under said assignment dated February 14, 1944; and any provisions of the foregoing sublease not consistent with the provisions of said lease of February 20, 1940 and said assignment of February 14, 1944, shall be without force or effect with respect to, and shall not be binding upon, the undersigned. Any termination of said sublease by surrender, forfeiture, or otherwise, shall forthwith vest in the undersigned such right, title and interest as they may have in and to the premises so surrendered or forfeited under said lease of February 20, 1940 and said assignment of February 14, 1944, respectively.''

The agreement of February 14, 1944, paragraph 6, provides that lessees ''hereby assume and agree to perform each and all the terms, covenants and conditions of said oil and gas lease dated *December 20, 1940* by the lessee thereunder to be performed with respect to the lands herein particularly described,'' and they ''shall not permit or suffer any default to be made in the performance of said oil and gas lease with respect to the lands hereinafter particularly described.''

Defaults exist with respect to both parcels and relate to the 460 acres. As long as Hilo Oil Company performed that obligation the Metzenbaums did not have to perform any drilling operations on the 160 acres retained by them, but by the very language of the consent which created a severance, drilling obligations of the assignment of February 14, 1944, were preserved with respect to the entire 460 acres, and as soon as Hilo Oil Company ceased drilling on its 300-acre parcel the Metzenbaums had to commence drilling on their retained 160-acre parcel or the entire sublease of February 14, 1944, would be in default.

It is argued that the notice of default is based on the failure of the lessee defendants to continue drilling after five wells had been drilled; that in view of the severance of the 160-acre parcel, this parcel could only be in default as to the drilling of an original well; that a notice of default will, under no circumstances, cover any default except that default named in the notice; that the 160-acre parcel was in no way in default because lessors claimed additional wells should be drilled; that it was severed from the 300 acres upon which five wells had been drilled; that the notice of default was defective and could in no way reach the 160-acre parcel.

The court specifically found that no drilling by any of the defendants upon the entire leasehold took place after September 8, 1945; that "In paragraph 6 of said agreement of February 14, 1944, said defendants Metzenbaum assumed and agreed to perform all the obligations of the lease of December 20, 1940 . . . and agreed that they 'shall not permit or suffer any default to be made in the performance of said oil and gas lease with respect to the lands hereinafter particularly described.' " It then found that all defendants, including appellants, were in default with respect to the provisions of the agreement of February 14, 1944. Appellants, therefore, under the terms of their agreement, were not relieved of their default by reason of any claimed severance of the leasehold. (24 Am.Jur. § 90, p. 595.)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.