[Civ. No. 13906.  First Dist., Div. One.  Feb. 10, 1949.]

FRED W. HIGNELL, JR., et al., Respondents, v. ALLIE GEBALA, Appellant.

Nathan G. Gray and C. Leonard Rosenberg for Appellant.

John Charles Houlihan for Respondents.

BRAY, J.—Plaintiffs were awarded a judgment for restitution of premises, attorney's fees, and declaring a forfeiture of lease on the ground that defendant had violated the terms of the lease by operating a real estate business on the leased premises. Thereafter defendant filed a petition for relief against forfeiture. The court ordered this petition dismissed. Defendant appeals from both the judgment and the order made after judgment. Whether defendant actually operated such business is the main fact issue in the case.

Defendant contends (1) that there is insufficient evidence to justify a finding that a term of the lease had been vio-

lated, and if any violation were established it is not a substantial one; (2) service of the statutory three days' notice is required, and being neither alleged nor proved, no cause of action in unlawful detainer is established; and (3) the petition for relief was improperly denied.

## FACTS

Plaintiffs, husband and wife, were landlords of an apartment building in Oakland, and defendant was a tenant, under a lease entered into between plaintiffs' predecessor in interest and defendant's assignor. Defendant had taken the lease subject to all its terms. The terms important here are:

"3. Lessees shall use the demised premises solely for conducting an apartment house business. . . .

"12. . . . if Lessees shall be in default in any rental payment hereunder for a period of fifteen days after the same shall be due and payable, or shall be in default in any of the other terms, covenants, or conditions hereof for a period of fifteen days from and after written notice of such default given by Lessors to Lessees, then in any of such events Lessors shall have the option, without notice to lessees or demand for performance, either: . . .

" (2) To re-enter the demised premises, remove all persons therefrom, take possession of the premises and either:

" (a) Terminate this lease . . ."

On February 28, 1947, plaintiffs mailed to defendant a registered envelope containing a "Notice To Desist From Violating An Obligation Of Lease." This notice stated that defendant had violated the terms of her lease by using or allowing the leased premises to be used for a real estate business, to wit, the West-O-Lake Real Estate Company. It gave her 15 days from its receipt either to desist from operating such business or allowing it to be operated, or to remove from the premises, or else the plaintiffs would institute proceedings to declare the lease forfeited. Defendant refused to accept this envelope from the postman. (She testified that as it did not have plaintiffs' names on the outside she thought it meant trouble from one of her tenants.) On March 27, defendant was served with a "Ten Day Notice Demanding Possession." This notice stated that defendant was using the premises for a real estate business in violation of the terms of the lease, and demanded possession in 10 days. At the expiration of the time mentioned, this action was brought.

### 1. SUFFICIENCY OF THE EVIDENCE

There is substantial evidence to support the court's finding that defendant was operating a real estate business in violation of the terms of the lease and the implied finding that such violation was a substantial one. Concerning whether defendant was operating a real estate business on the premises, the evidence is conflicting. Taking the evidence most strongly in favor of plaintiffs and the reasonable inferences therefrom, they show that defendant was operating a real estate business from her apartment. Her real estate broker's license, issued September 16, 1946, and expiring June 30, 1947, gave the address of the apartment house as her place of doing business. At one time the license hung on the wall of defendant's room. She testified, however, that it was not there after January. A card, a little larger than a postcard, on which was typed the name ''West-O-Lake Realty Company'' and defendant's apartment number, was on the mailbox on the outside of the building by the bell to defendant's apartment. This was not taken down until March 28. On January 13, defendant wrote plaintiffs requesting permission to attach to the building a neon sign reading ''Real Estate.'' This permission was denied. Many advertisements appearing in the Oakland Tribune from March 17 to June 22 were admitted in evidence. These contained offers of sale of real estate and of business opportunities. These usually contained the name West-O-Lake Realty Company and defendant's apartment telephone number. Some contained other phone numbers. None gave the address of the apartment house. Defendant kept on the premises some wooden signs of the type placed on property to be sold. They said ''For Sale'' and ''West-O-Lake Real Estate, 1515 Alice.'' This was the address of the apartment house. Two witnesses overheard defendant talking on the phone in her apartment. A reasonable interpretation of these conversations is that defendant was talking to sales prospects. The second conversation was in April. Also in March, April, and August defendant was overheard discussing real estate listings with persons on the premises. Other incidents were given which reasonably justify the inference that even after defendant had received the 10 days' notice and this suit was pending, she was conducting a real estate business from her apartment.

The trial judge and the counsel adopted the theory that plaintiff had to show that defendant had acted as a real estate

broker, not simply attempted to sell her own property. Defendant argues that the evidence did not show she had carried on a real estate business, since (1) there was no evidence that she was working *for others,* for *compensation,* and (2) the fact that she made contacts by phone calls would not in itself constitute doing business on the premises. Although there was no direct evidence that the properties involved were other than her own, or that she was working for remuneration, there were reasonable inferences leading to those conclusions. It is unreasonable to infer, as defendant would have the trial court and this court do, that she did not receive compensation for her services. Defendant did not explain all of the incidents proved as involving her property alone. The newspaper advertisements referred to property which did not belong to her. The evidence here, although depending in part on inferences, is sufficient to justify the finding of fact that defendant did engage in the real estate business on the premises.

■ As to the substantiality of the violation, the evidence shows that the violation was wilful. Therefore, the court will not measure the extent of the violation. The rule is well expressed in *Crowell* v. *City of Riverside,* 26 Cal.App.2d 566, 583 [80 P.2d 120]: ''In the instant case, however, . . . the breach complained of was definitely a willful act on appellant's part within the meaning of the term 'willful' as used in section 3275 of the Civil Code. In these circumstances we do not think it would have been competent for the trial court to undertake to measure the degree of departure which the making of the sublease to Brooks tended to bring about or did bring about from the plan for the operation of the aviation field which the basic lease contemplated . . . The courts are not authorized to substitute their judgment on the subject.'' While the court made no direct finding of wilfulness, such a finding is implied from the fact that the court ordered the lease forfeited.

## 2. FORM OF ACTION

■ Defendant contends that this is an unlawful detainer action, and the failure of plaintiffs to allege and prove the three days' notice required by section 1161, subdivision 3, Code of Civil Procedure, is fatal. Whether the complaint, which contained the allegation that defendant was unlawfully holding over, was one in unlawful detainer or in ejectment, as plaintiffs now claim, is immaterial for the reason that at the trial, both counsel and the court considered the issue to be that of unlawful detainer. At the outset of the

trial plaintiffs' counsel announced to the court, "this is a suit in unlawful detainer." The court in both its findings and judgment found defendant to be "guilty of unlawful detainer." Also, a three-day summons was issued, which of course can only be issued in unlawful detainer proceedings. The case, therefore, must be considered as one brought in unlawful detainer. "A case on appeal must be disposed of upon the issues presented in the court below." (*Jacobs* v. *Board of Dental Examiners*, 24 Cal.App.2d 359, 361 [75 P.2d 96].)

The lease provided: "21. Any and all notices provided to be given hereunder shall be by registered mail" addressed to the lessee at the demised premises. It was pursuant to this section that plaintiffs sent by registered mail to the defendant the 15-day notice mentioned in section 12 of the lease (*supra*). This notice was sufficient. "There is nothing in the contractual provision for the termination of the lease that violates any rule of public policy, and that parties may, in their lease, provide for the termination thereof upon notice different from and superseding that prescribed by the code is well established. [Citing cases.]" *Devonshire* v. *Langstaff*, 10 Cal.App.2d 369, 372 [51 P.2d 902]; *Buhman* v. *Nickels & Brown Bros.*, 1 Cal.App. 266 [82 P. 85].) Defendant refused to accept this notice but is bound by it. That she continued to carry on the real estate business during the 15 days given her to desist is shown by the fact that she was still doing so even after the suit was filed.

The question next to be determined is whether, under the circumstances of this case, a three days' notice under section 1161, subdivision 3, Code of Civil Procedure, is required. That section provides that a tenant is guilty of unlawful detainer "When he continues in possession . . . after a neglect or failure to perform other conditions or covenants of the lease . . . than the one for the payment of rent, and three days' notice, in writing" is given; "provided if the conditions and covenants of the lease, violated by the lessee, can not afterward be performed, then no notice, as last prescribed herein, need be given to said lessee or his subtenant, demanding the performance of the violated conditions or covenants of the lease."

In *Harris* v. *Bissell*, 54 Cal.App. 307 [202 P. 453], the tenants expressly agreed that they would use the leased premises for sheep pastures only. The tenants raised a crop of grain on the land. In an unlawful detainer proceeding, it was held that the latter portion of subdivision 3 applied and

no three days' notice was necessary, "the land having been used for a purpose not authorized by the lease, something which could not be undone."

In *Buhman* v. *Nickels & Brown Bros., supra* (1 Cal.App. 266), the lease provided that the tenant would "quit and surrender the said premises upon 30 days' written notice." (P. 267.) In an action in unlawful detainer the tenant contended that the three days' notice must be given. The court held that it was not required, as the tenant could not by any act prevent the lease from lapsing. "The law neither does nor requires an idle act." (P. 269.)

*Pfitzer* v. *Candeias,* 53 Cal.App. 737 [200 P. 839], was also an action in unlawful detainer. The tenant agreed "to keep all stock off the alfalfa land when the same is wet." (P. 739.) The tenant contended that the notice given was insufficient. The court said (p. 740) : "Appellant urges that the notice to surrender possession was insufficient because it 'did not require of him the performance of his covenant to keep his stock off of the alfalfa land while wet.' The contention is without merit. Manifestly the performance of the covenant was then impossible in so far as past breaches were concerned. Section 1161 of the Code of Civil Procedure provides that where performance of a covenant is no longer possible, demand for the performance thereof is not required. [Citing cases.]"

In the unlawful detainer case of *Matthews* v. *Digges,* 45 Cal.App. 561 [188 P. 283], the tenants agreed to poison squirrels on the leased property. "The appellant's next contention is that the plaintiff's written notice and demand of possession of the premises covered by said lease was insufficient, for the reason that he failed to serve therewith the three days' notice to perform the covenants of said lease or deliver possession, as required by subdivision 3 of section 1161 of the Code of Civil Procedure. A reference to said section, however, shows that it is only in cases where the conditions and covenants of a lease violated by a lessee can be performed within three days after the giving of such notice that the duty is cast upon the lessor to give notice to his lessee to perform the same within said time or surrender possession of the leased premises. In the case at bar the evidence sufficiently showed, and the court found, that the conditions of the foregoing covenant respecting the poisoning of squirrels upon the leased premises could not have been performed within three days after notice of its violation." (P. 564.)

In our case defendant had violated the terms of her agreement to use the premises solely for conducting an apartment house business. While, if she had been given a three days' notice, she could have stopped thereafter conducting a real estate business on the premises, she could not undo the violation of the lease which she had already committed and for which plaintiffs in their 10 days' notice terminated the lease. Under the circumstances of this case, no three days' notice was required, and hence plaintiffs alleged and proved a cause of action in unlawful detainer.

3. THE PETITION FOR RELIEF SHOULD HAVE BEEN HEARD

Within the proper time and pursuant to the provisions of section 1179 of the Code of Civil Procedure, defendant filed a petition for relief from forfeiture. In her petition she alleged (no answer to it was filed by plaintiffs) that defendant invested the sum of $13,000 for the assignment of the lease and certain furniture and furnishings in the apartment; that since obtaining the lease in 1944 she had expended about $5,000 for repairs and replacements, and that because of these substantial expenditures she would lose money unless allowed to remain in possession and amortize the expenditures over the full term of the lease. Defendant offered to pay damages for any harm suffered and to perform all covenants, so far as practicable. The court dismissed the petition, on the ground that the breach of the lease as found by the court ''in the findings of fact and conclusions of law heretofore made and the judgment herein, is of a type and nature for which no relief is provided by Section 1179 of the Code of Civil Procedure or any other law applicable thereto, and said petition for relief from forfeiture of lease not stating facts sufficient to give this court jurisdiction to act thereon.'' Just what the court meant by lack of jurisdiction does not appear in the record. At argument, it was stated that as the court at the trial had impliedly found that the breach was wilful, the court was barred by Section 3275 of the Civil Code from considering the petition.

Defendant contends that the court should have heard the petition on its merits. The order shows that the hearing of the petition was continued from time to time and then submitted. Apparently no evidence was taken. Strictly speaking, the court had jurisdiction. However, as there was no denial of the facts alleged in the petition, the question to be determined is whether on those facts the court could have

granted relief in view of its implied finding that defendant's breach was wilful. The petition set up facts to show hardship resulting to defendant from the forfeiture, and that she did not know that her conduct constituted a breach of the lease, nor was there any intent on her part to violate it. Section 1179 of the Code of Civil Procedure provides: "The court may relieve a tenant against a forfeiture of a lease, and restore him to his former estate, in case of hardship, where application for such relief is made . . . In no case shall the application be granted except on condition that full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made." ▇ There is no reference in this section to section 3275 of the Civil Code nor to any other test than "hardship." There is no case which holds that in determining the question of hardship under section 1179, Code of Civil Procedure, section 3275, Civil Code, which holds that a party may be relieved from a forfeiture "upon making full compensation to the other party, except in case of a . . . wilful . . . breach of duty," must be applied. In *Olympic Auditorium, Inc.* v. *Superior Court*, 81 Cal.App. 283 [253 P. 944], the court said (p. 285): "Undoubtedly, the granting of relief under section 1179 is discretionary in the court to which an application for the relief is made (*Matthews* v. *Digges*, 45 Cal.App. 561 [188 P. 283]), and, of course, the court has discretion either to grant or deny." In *Matthews* v. *Digges, supra,* it was held (p. 566): "The matter of granting or denying such an application is one which lies so largely in the discretion of the trial court that it would require a very clear showing of an abuse of such discretion to justify a reversal of the order made thereon."

In *Pfitzer* v. *Candeias, supra* (53 Cal.App. 737), cited by plaintiffs, it was argued that the court should not have declared a forfeiture of the lease because the breach was capable of compensation in damages, citing section 3275. The court defined "wilful" in that section as meaning "voluntary" or "intentional" and not implying maliciousness, and held that as the breach was wilful and there was no measure of damages which could be applied, the court was not in error in declaring a forfeiture. It was not a proceeding under section 1179. ▇ This section is special in its nature, applying only to unlawful detainer proceedings, while section 3275 is general. ▇ Under section 1179, the court in balancing the equities should take into consideration the circumstances

of the case, the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the wilful or other character of the breach, and then use its best discretion in determining whether relief will be granted. Its action will not be upset unless there is a clear showing of abuse of discretion. Here, the fact that the court at the trial had found the breach to be wilful did not deprive it of jurisdiction to hear the application for relief under section 1179. The court did not exercise its discretion. It refused to act, on the erroneous assumption that it had no jurisdiction to act. The court will have to consider the petition and from all the factors above mentioned decide whether or not to grant the requested relief.

The judgment is affirmed. The order dismissing the petition for relief against forfeiture of the lease is reversed, and the trial court is instructed to hear and determine said petition.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1949. Carter, J., voted for a hearing.