**GENERAL STAR INDEMNITY COMPANY, Plaintiff,**

v.

**THUNDERBUTTE ENTERPRISES, LLC, dba Sierra Nevada House, Defendant.**

**No. 2:16–cv–00628–MCE–AC**

United States District Court, E.D. California.

Signed November 16, 2016

Filed November 17, 2016

Paul Andrew Impellezzeri, Alan H. Barbanel, Barbanel & Treuer, P.C., Los Angeles, CA, for Plaintiff.

Ivo Labar, Kerr and Wagstaffe, San Francisco, CA, for Defendant.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR.,
UNITED STATES DISTRICT JUDGE

Plaintiff General Star Indemnity Company ("Plaintiff") has filed the present lawsuit seeking a judicial determination that it acted appropriately in denying a fire claim submitted by its insured, Defendant Thunderbutte Enterprises, LLC ("Defendant"). According to Plaintiff, it properly cancelled Defendant's policy prior to the subject fire on grounds that Defendant had failed to adopt mandatory safety recommendations. To the extent that Plaintiff claims it mistakenly advanced Defendant's funds towards the fire losses it sustained, Plaintiff also includes a claim for unjust enrichment as to those funds.

Currently before this Court is Defendant's Motion to Dismiss for failure to state a viable claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion is GRANTED.[1]

## BACKGROUND [2]

Defendant owns and operates the Sierra Nevada House, a historic hotel and restaurant located in Coloma, California. According to Plaintiff's Complaint, Plaintiff is "a surplus lines insurance carrier authorized to do business in the State of California through licensed surplus lines brokers." Pl.'s Compl., ECF No. 1, ¶ 7. On or about June 26, 2015, Plaintiff, through its underwriter, Bass, and retail insurance Broker, Deatsch Insurance Agency, Inc., issued its Commercial Property Insurance Policy ("Policy") to Defendant. The Policy provided loss coverage on Defendant's building of up to $1,000,000.00, and further afforded additional coverage for personal property and business income losses. See Policy, Ex. A to Pl.'s Compl., p. 23. The Common Policy Declarations page states that no inspection of the insured premises was required before issuance of the Policy. Id. at p. 6. The Policy does provide, however, that Plaintiff had the right to inspect the property and "recommend" changes. Id. at p. 7.

Plaintiff's Policy included the following provisions addressing the cancellation of a policy in effect for more than 60 days:

3. All Policies In Effect For More than 60 Days

a. If this policy has been in effect for more than 60 days . . . we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium. . . .

(2) Discovery of fraud or misrepresentation by

(a) Any insured . . . in obtaining this insurance;

---

1. Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

2. This statement of facts is based on the allegations in Plaintiff's Complaint. ECF No. 1.

(b) You...in pursuing your claim under this policy

(3) A judgment by a court or administrative tribunal that you have violated a California or Federal law. . . .

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements agreed to by you as a condition of policy issuance, or which were conditions precedent to a particular rate or rating plan, if that materially increases any of the risks insured against.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

Pl's Compl., ¶ 12. In this way, the Policy tracks the statutorily permissible reasons for cancellation of a commercial policy under California Insurance Code § 676.2, and makes it clear that the required advance notice of cancellation must be mailed at least 30 days before the effective date of cancellation, and must further state the particular reason the policy is subject to cancellation.

On or about July 17, 2015, Bass ordered an inspection of the Sierra Nevada House in accordance with Plaintiff's right to obtain such inspection. That inspection was performed by Insurance Research Services on August 11, 2015 and the resulting report concluded, among other things, that "no unusual hazards appear to be posed by operations, equipment, or materials." Inspection, Ex. 2 to Pl.'s Compl., p. 8. The inspection did, however, reveal the absence of "splash guards between the deep fryers and adjacent cooking units." Id. Lastly, the report noted that "[t]he information contained herein represents conditions and information available at the time of inspection, and the opinions of the on-site inspector, but [are] not based on any laws, codes or regulations." Id. at p. 7.

Following its receipt of the report, Plaintiff's underwriter, Bass, issued a letter on September 16, 2015 which referred to the inspection as a "loss control survey" and contained a "Mandatory Recommendation" consisting of seven separate items for which Defendant was asked to certify compliance. Pl.'s Compl., Ex 3, p. 1. The compliance terms at issue included a recommendation that the fryers be "at least 18 [inches] or more from the open flame cooking unit" with a directive that a metal baffle plate be used to separate the two cooking areas. The letter contained no reference whatsoever to violations of any law or regulation.

On October 21, 2015, Plaintiff issued a Notice of Cancellation by mail, with an effective date of November 23, 2015. Pl.'s Compl., Ex. 4. The stated reason for the cancellation was "[f]ailure to comply with recommendations." No further explication was included in the Notice, and again there was no indication that Defendant had violated any law or regulation. Plaintiff's underwriter, Bass, subsequently emailed the retail broker, Deatsch, and indicated that if Defendant complied with the recommendations, the Policy could be reinstated. Deatsch forwarded Bass an email from Defendant indicating that some of the recommendations had been completed, although apparently not those pertain-

ing to fryer spacing. According to Plaintiff, Defendant never provided a signed compliance form as to that particular recommendation.

On December 14, 2015, the Sierra Nevada House sustained fire damage. The fire started on the second floor after work hours. Apparently not realizing that it purportedly had cancelled Defendant's Policy, Plaintiff appointed an independent adjustor to handle the claim. On or about December 17, 2015, that adjuster, Engle Martin & Associates, made a preliminary determination that the Sierra Nevada House was a total loss. Thereafter, Plaintiff issued a $100,000 advance payment of policy proceeds towards Defendant's loss. Once Plaintiff became aware of the cancellation, its counsel demanded, by letter on March 23, 2016, that Defendant return its advance. In making that demand, Plaintiff indicated for the first time that Defendant's fryer configuration violated California Mechanical Code Section 515.1.1.3, which requires that "deep-fat fryers shall be installed with not less than a 16–inch (406 mm.) space between the fryer and the surface flames from adjacent cooking equipment." See Ex. 2 to Decl. of Ivo Labar, ECF No. 5–2, p. 2. The letter advised Defendant, also for the first time, that Defendant's cancellation was in fact based on a violation of a "state law or regulation establishing safety standards." Id.

Plaintiff brought this suit against Defendant seeking declaratory relief that it had effectively cancelled the Policy before the fire, and that its $100,000 advance was made in error.

Pursuant to Federal Rule of Civil Procedure [3] 12(b)(6), Defendant now seeks dismissal of (1) the declaratory relief claim set forth in Plaintiff's First Cause of Action, and (2) the mistaken receipt/unjust enrichment claim made in Plaintiff's Second Cause of Action.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

---

**3.** All subsequent references to "Rule" are to the Federal Rules of Civil Procedure.

Furthermore, "Rule 8(a)(2) ... requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3, 127 S.Ct. 1955 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

■ A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment ...." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party ... carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the com-

plaint could not be saved by any amendment." Intri–Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint ... constitutes an exercise in futility ....")).

## ANALYSIS

### A. Policy Cancellation

Defendant first seeks dismissal of Plaintiff's declaratory relief claim as set forth in the First Cause of Action. Defendant argues that Plaintiff is not entitled to a determination that the Policy was no longer in effect because Plaintiff did not strictly comply with the requirements governing cancellation of commercial policies. Defendant points to California Code of Civil Procedure § 1013(a), which extends the service requirement by five calendar days when mailing to a California address, and argues that Plaintiff's cancellation did not fall within those time parameters. Defendant also points to terms contained within the Policy itself which constitute the only grounds upon which cancellation can be predicated, and argues that Plaintiff's notice of cancellation did not specify a permissible reason for cancellation. The validity of both those arguments will now be addressed.

#### 1. Timeliness

■ It is well established that "notices of cancellation must strictly comply with statutory directives and the insurance policy's termination provisions." Mackey v. Bristol West. Ins. Services of Cal. Inc., 105 Cal.App.4th 1247, 1258, 130 Cal.Rptr.2d 536 (2003). "In California, there is no such thing as substantial compliance in furnishing notice that an insurance policy has

been cancelled." Id. The Policy specifies that, in the event the Plaintiff decides to cancel for reasons other than non-payment of premium or fraud, it "will mail or deliver advance written notice of cancellation, stating the reason of cancellation" to the insured at the mailing address shown in the Policy "at least 30 days before the effective date of cancellation." Policy, ECF No. 1–1, at p. 16. This mirrors the requirements of California Insurance Code § 676.2(c)(1), which prohibits any change in commercial policy coverage "unless a written notice is mailed or delivered to the named insured and the producer of record at the mailing address shown on the policy, at least 30 days prior to the effective date of the.... change." Those requirements specifically apply to notices of cancellation. Cal. Ins. Code §§ 676.2(b); 677.2(b). Significantly, too, after a commercial policy has been in effect for more than 60 days, § 676.2 states unequivocally that "[s]ubdivision (a) of Section 1013 of the [California] Code of Civil Procedure is applicable if the cancellation notice is mailed." Cal. Ins. Code § 676.2(c)(1). Section 1013(a) expressly provides that the right to act or make any response to a notice served by mail "shall be extended five calendar days... if the place of address and the place of mailing is within the State of California." Therefore, although the policy states only that it may be cancelled upon 30 days' notice, whether by mail or other delivery, both the California Insurance Code and the California Code of Civil Procedure indicate that an additional five days' notice must be provided if service is effected by mail.

■ There is no dispute here that Plaintiff mailed its cancellation notice to Defendant, and that the notice was mailed on October 21, 2015, 33 days before the November 23, 2015 date of cancellation. See Pl.'s Compl., ECF No. 1, ¶ 16 and Ex. 4 thereto. Consequently, it is undisputed that Plaintiff provided less than 35 days of notice if the initial 30–day period is augmented by five days for service by mail. Plaintiff nonetheless argues that those provisions are not applicable to its Policy on grounds that commercial insurance provided by surplus line non-admitted insurers are exempt from the mailing requirements of the Code of Civil Procedure under California Insurance Code § 675.5(d)(7). Plaintiff makes that contention despite the fact that its complaint makes no reference to it being a surplus line non-admitted insurer or being "unauthorized" to do business in California. To the contrary, Plaintiff's Complaint states specifically that it "is a surplus lines insurance carrier *authorized to do business in the State of California.*" Pl.'s Compl., ¶ 7 (emphasis added).

" 'Nonadmitted insurance' means any property and casualty insurance permitted to be placed directly or through a surplus line broker with a nonadmitted insurer eligible to accept such insurance." Cal. Ins. Code § 1760.1(m) (West 2016). " 'Nonadmitted insurer' means an insurer not licensed or admitted to engage in the business of insurance in this state ...." Id. § 1760.1(n). While Plaintiff's own complaint belies any such non-admitted status, ultimately the distinction makes no difference in the Court's analysis. The California Supreme Court has held that where a statute covers the subject matter of a provision in an insurance policy, the policy provision should be interpreted consistently with California public policy as expressed by the statute. Prudential–LMI Com. Ins. v. Super. Ct., 51 Cal.3d 674, 684, 274 Cal. Rptr. 387, 798 P.2d 1230 (1990) ("When a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature.") Here, because the policy itself, in accordance with the California Insurance Code, provides for 30 days' notice of cancellation, and allows notice of cancellation

to occur by mail, the Insurance Code's additional directive that five additional days be added for mailing under California Code of Civil Procedure § 1013 also applies.

In enacting Insurance Code §§ 676.2 and 677.2, the legislature clearly contemplated that five additional days' notice be added for policies cancelled by mail. Here, because the cancellation provisions of Plaintiff's policy were modelled after the Insurance Code, the policy must be interpreted as requiring the five additional days' notice called for by statute if cancellation is by mail. Consequently, even if Plaintiff was not required to adhere to the mailing requirements of the California Insurance Code as a surplus line non-admitted insurer, as it alleges, by its own policy it in effect elected to do so.

Plaintiff further argues that the mailing requirements of California Code of Civil Procedure § 1013(a) still do not apply because "[n]otices called for by private contracts such as insurance policies are not within the scope of Section 1013." Alphonzo E. Bell Corp. v. Listle, 55 Cal.App.2d 300, 306, 130 P.2d 251 (1942). As Defendant points out, however, Plaintiff's reliance on Alphonzo in this regard is misplaced. Alphonzo in fact provides that Section 1013 "would not apply to notices called for by private contracts *which fail to provide for service by mail.*" Id. (emphasis added). Here, the Policy provides for service by mail, and Plaintiff indeed did mail its notice of cancellation. Thus, the additional mailing time requirement applies, and Plaintiff did not provide sufficient notice.

### 2. Reasons for Cancellation

██ Like timeliness, strict compliance is also required with regard to the permis-

sible reasons for which a commercial policy can be cancelled under California Insurance Code § 676.2. Kotlar v. Hartford Fire Ins. Co., 83 Cal.App.4th 1116, 1120, 100 Cal.Rptr.2d 246 (2000). Under the statute, a carrier has a mandatory obligation to disclose those reasons in a notice of cancellation. Lee v. Indus. Indem. Co., 177 Cal. App. 3d 921, 924, 223 Cal.Rptr. 254 (1986). As indicated above, Plaintiff's Policy itself delineates the grounds for which cancellation can occur, and these grounds are identical to those set forth in Section 676.2. See Pl.'s Compl., ECF No. 1, ¶ 12; Policy, Ex. 1 at 15–16; see also Cal. Ins. Code § 676.2. For purposes of the present matter, those grounds fall under the following provisions:

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named insured or his or her representative which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.[4]

Pl.'s Compl., ¶ 12.

██ Defendant contends that Plaintiff did not strictly comply with these requirements in cancelling its Policy. The cancellation notice itself states only that the Policy was being cancelled for "[f]ailure to comply with recommendations." ECF No. 1–4 at 2. Now, however, Plaintiff argues that Defendant violated state law because

---

4. Plaintiff refers to the fryer spacing recommendation as a "loss control measure." ECF No. 1–3 at 2. An argument for failure to implement reasonable loss control requirements is not plausible here because that recommendation was not a precondition to the issuance of the Policy.

"the position of the deep fat fryer was closer to the open flame burners of the stove than permitted by the California Mechanical Code [S]ection 515.1.1.3." Pl.'s Opp., ECF No. 9, 7:16–18. Plaintiff alleges that "there is no material distinction between the violation and the recommendations because one of the recommendations was a request that Thunderbutte correct the unsafe distance between the deep fat fryer and the open flames of the stove, which was the same violation of the Mechanical Code that Bass had discovered." Id. at 8:9–13. Nonetheless, it appears undisputed that Plaintiff did not make any specific contention that Defendant violated the California Mechanical Code until some three months after the fire, on March 23, 2016, when Plaintiff's counsel suggested that the "recommendations" in fact amounted to a violation of Section 515.1.1.13. See Ex. 2 to Decl. of Ivo Labar, ECF No. 5–2, p. 2.[5]

Here, because Plaintiff did not reference a violation of Mechanical Code Section 515.1.1.3 as its reason for cancellation, and only did so indirectly months after the Policy was purportedly cancelled, Plaintiff did not strictly comply with the terms of both the Policy and the California Insurance Code, which required Plaintiff to specify an authorized reason for cancelling any policy issued for more than 60 days. Though Plaintiff later identified "violations of state laws or regulations the fact remains that Plaintiff's cancellation notice did not specify that authorized ground as its reason for cancelling Defendant's policy, and, instead referring only to "failure to follow recommendations." "Failure to follow recommendations," in and of itself, however, is not a valid reason for cancelling an existing commercial policy under California Insurance Code § 677.2. Clarendon Nat'l. Ins. Co. v. Ins. Co. of the West, 442 F.Supp.2d 914, 938 (E.D. Cal. 2006). Plaintiff, accordingly, did not comply with the requirements for cancelling Defendant's Policy.[6]

Plaintiff's declaratory relief claim as set forth in the First Cause of Action is therefore DISMISSED. Because the Court concludes that Plaintiff cannot amend its complaint to state a viable claim for declaratory relief under the circumstances of this case, no leave to amend will be permitted.

## B. Mistake/Unjust Enrichment

Defendant also seeks dismissal of Plaintiff's Second Cause of Action, which alleges unjust enrichment on Defendant's part for retaining Plaintiff's erroneously issued advance payment. Defendant argues that Plaintiff cannot claim a mistake when its underwriter, Bass, knew the Policy was cancelled. Plaintiff claims that it had no knowledge that the Policy had been cancelled.

There is little uniformity among courts with respect to the requirements for pleading mistake. One court has adopted a strict view that requires a party to allege facts showing: (1) how the mistake was made; (2) whose mistake it was; and (3) what brought about the mistake. Auerbach v. Healy, 174 Cal. 60, 62, 161 P. 1157 (1916). Other courts have allowed mistake to be

---

5. Nor would Defendant have necessarily inferred any violation of the Mechanical Code from Plaintiff's Mandatory Recommendation, since the spacing requirements of the Mechanical Code, at 16 inches, are different from the recommendation made in the Inspection report that fryers be at least 18 inches from an open flame cooking unit.

6. Even if Plaintiff identified a violation of law in the cancellation notice, which it did not, Plaintiff would still have to establish that the violation "materially increased its risk." As indicated above, the loss control survey report did not identify any such risk in its assessment. See ECF No. 1–2.

pleaded inferentially. <u>Robertson v. Melville</u>, 60 Cal.App. 354, 212 P. 723 (1923).

■■■■ Here, however, the subtleties of that distinction do not affect that viability of Plaintiff's mistake claim. Plaintiff has already pleaded that Bass was "authorized to underwrite and issue policies of insurance on behalf of General Star" (Pl.'s Compl., ¶ 8), making Bass an agent of General Star. Additionally, Plaintiff acknowledged that Bass knew the Policy had been cancelled; indeed, it generated the notice of cancellation. <u>Id.</u> at ¶ 16. It is well-settled law in California that "notice to an agent is notice to the principal . . . ." <u>Early v. Owens</u>, 109 Cal.App. 489, 495, 293 P. 136 (1930). Thus, Plaintiff cannot plead a mistake when Bass had notice of the Policy's cancellation, even if Plaintiff itself did not have direct knowledge of the fact. Accordingly, Plaintiff's mistake claim is DISMISSED. Because Plaintiff is unable to cure the defect as a matter of law, the dismissal is with prejudice.[7]

### CONCLUSION

Defendant's Motion to Dismiss, ECF No. 5, for failure to state a claim is GRANTED as follows:

1. The Motion is GRANTED as to Plaintiff's declaratory relief claim set forth in Plaintiff's First Cause of Action. The First Cause of Action is therefore DISMISSED with prejudice.

2. The Motion is additionally GRANTED as to Plaintiff's mistake/unjust enrichment claim contained in Plaintiff's Second Cause of Action. That claim is also DISMISSED with prejudice.

3. The matter having now been concluded in its entirety, the Clerk of

Court is directed to enter judgment against Plaintiff and close the file.

IT IS SO ORDERED.

---

7. Both sides have requested that the Court judicially notice various documents in accordance with Federal Rule of Evidence 201. Both those requests are unopposed and are GRANTED.